MARCUS, Justice.
This is an appeal from the judgment of the 19th Judicial District Court concerning a management audit of Gulf States Utilities Company (GSU) ordered by the Louisiana Public Service Commission (the commission). Both GSU and the commission appealed the district court’s decision.
GSU is a public utility corporation headquartered in Beaumont, Texas and engaged in the generation, transmission, and distribution of electricity in Louisiana and Texas. It has been involved in a rate case that is relevant to the instant case'. On July 25, 1986, GSU initiated the rate case by filing a rate increase application with the commission. On December 15, 1987, the commission issued an order which GSU appealed to the 19th Judicial District Court. On February 18, 1988, the court granted a preliminary injunction ordering additional rate relief in favor of GSU. The court ordered that GSU would receive an immediate first-year rate increase of ninety-two million dollars and a phase-in plan allowing increases of fifty million dollars in the second, third, and fourth years and $37.74 million in the fifth year. The court further ordered that the commission’s “power and authority to order a rate decrease demonstrated to be just and reasonable after hearing is reserved.” GSU appealed the judgment to this court, but by agreement of all parties this court was requested to defer consideration of the appeal pending final outcome of hearings on the prudency of GSU’s investments in the River Bend I nuclear facility and the allocation of the ninety-two million dollar rate increase. In the summer of 1988, the district court held approximately six weeks of hearings on those issues, then remanded the matter to the commission. The commission employed a consulting firm, Kennedy and Associates (Kennedy), to investigate the prudency of GSU’s investments in the River Bend I *575 facility. The first and second-year rate increases have been implemented with some modifications agreeable to GSU. On October 11, 1989, the district court issued reasons for judgment finding that “reasonable basis exists in the record for the COMMISSION’S finding of imprudence on the part of GSU management in this matter.” The court also stated that “judgment will be rendered herein” ordering the commission to implement the third, fourth, and fifth-year rate increases as initially ordered on February 18, 1988, reserving to the commission the right and authority to change either the amount of the rate increases or the return on equity in the third, fourth, and fifth years after a full hearing on the matter. The court again remanded the case to the commission, this time for a determination of the basis of the rate allocation.
During the above rate case proceedings, the commission ordered the management audit of GSU that is at issue in the instant case. On April 29, 1988, the commission issued the following press release announcing that the management audit was under consideration:
State Public Service Commissioners Louis J. Lambert of Gonzales and Thomas E. Powell of Eunice jointly announced today that they will formally move to institute a full management audit of Gulf States Utilities. The purpose of the audit would be to examine the management practices of the company relative to productivity, the avoidance of waste, and efforts to cut costs, among other possible inquiries. The matter will be on the next commission agenda for consideration. They will propose that Kennedy & Associates be authorized to perform this audit. Kennedy & Associates is the firm currently involved in the GSU rate case. The commissioners indicated that the proposed audit would be as extensive as necessary to determine whether all possible steps are being taken to control potential losses that would impact rates.
On May 19, 1988, counsel for GSU responded to the press release in a letter sent to the commission. The letter discusses a management audit of GSU that was ordered by the Public Utility Commission of Texas and was conducted by Temple, Barker & Sloane between August 1985 and February 1986. GSU paid Temple $654,000 for conducting that management audit. It resulted in 123 recommendations and predicted annual net savings of $13,825,000 or more. GSU has filed quarterly reports on its implementation of the recommendations. According to the letter from GSU’s counsel, the “defined scope of this Texas audit seems to parallel and include all the issues identified as being the subject of the audit proposed in the press release.” Moreover, the “data provided to the auditors included information about the company’s Louisiana operations.” Accordingly, counsel for GSU asked the commission to “review the audit results and all available background material” and to give GSU an opportunity to have its views addressed before the commission voted.
The commission placed the management audit on its agenda for an open session on June 1, 1988. The agenda was publicly available during the week before the June 1 session. At the June 1 session, Commissioner Lambert said that GSU was opposing a new management audit because of the Texas management audit, but “[w]hat happens in Texas and what happens in Louisiana on the GSU issue are certainly not the same.” The commission then voted to order that a full management audit of GSU be performed by Kennedy subject to commission approval of the scope and anticipated costs of the management audit. The commission further ordered that “Kennedy & Associates will present to each Commissioner in writing the details and anticipated costs necessary to perform a full management audit.” In a letter dated June 9, 1988, the commission informed GSU of its June 1 order and that the costs of the management audit would be assessed to GSU, pursuant to La.R.S. 45:1181. Kennedy submitted a proposal estimating the time required to complete the management audit to be ten months and total project costs to be $589,625, including $487,000 for labor costs and $102,625 for transportation, hotels, meals, and materials. The average *576 hourly rate ranges from $115 for a consultant to $165 for Dr. Jay Kennedy, the officer-in-charge. The proposal also states:
The purpose of a management audit is to review the management organization and operation as well as all operating functions within the corporation to attempt to identify areas where changes can be implemented to improve the performance of the Company. The objective of this is to lower the revenue requirements and thus rates to customers below what they otherwise would have been. These goals must of course be obtained while maintaining adequate reliability and quality of customer service_ Kennedy and Associates will concentrate on what might be considered the hard functional areas such as system planning, operations management, finance and accounting, corporate structure and other related functional areas.
The proposal makes no mention of the Texas management audit, but does provide for extensive interviews and consultation with GSU management and staff employees before Kennedy develops “a more focused and detailed work plan.”
In an open session on June 29, 1988, the commission voted to accept the proposal by Kennedy with all fees for the management audit capped at $589,685 unless a majority of the commission approves an increase. During discussion prior to this vote, Commissioner Schwegmann stated, “I think I heard Commissioner Lambert tell me that the state of Texas did a similar study of GSU.” Dr. Kennedy replied, “I think that’s right, similar study.... I think it’s at least three years old. I have not read it.”
On August 9, 1988, GSU timely filed a petition in the 19th Judicial District Court requesting that (1) the commission’s June 1 order be vacated and annulled as arbitrary, capricious, clearly erroneous, and violative of GSU’s right of due process; (2) a declaratory judgment be granted in favor of GSU and against the commission decreeing that the costs of the proposed management audit may not be imposed on GSU under La.R.S. 45:1180, et seq; and (3) alternatively, a declaratory judgment be granted decreeing that the commission must provide for timely recovery to GSU of all costs of the management audit.[1] The commission answered generally denying the allegations of the petition. On October 20, 1988, the trial court remanded the case to the commission to take such action as it considered appropriate in accordance with La.R.S. 45:1194. The record does not indicate a response by the commission.
Trial was held on January 23, 1989. GSU called only one witness: Mr. David Beekman, its manager of regulatory affairs. He testified that there is no assurance that GSU can recover the costs of the management audit, because GSU can only recover those costs if there is a rate case in the future that considers the costs as part of the regulatory expenses of a test year. However, he admitted that he did not know of any situation in which the commission has denied a regulatory expense that was incurred at the direction of the commission and fell into a test year. He further admitted that if there are regulatory expenses during a test year that are approved by the commission and used to set rates, those rates will remain in effect in subsequent years if there is no rate case. This would permit GSU to continue to collect the increased rates until there is another rate case, even if its regulatory expenses are less than those allowed in the test year. The commission called Mr. Marshall Brinkley, the secretary of the commission, and Dr. Kennedy. Both witnesses testified *577 that rate cases could be initiated by a utility or by the commission. Dr. Kennedy also said that he had reviewed the Texas management audit subsequent to his appearance before the commission and that his firm would not duplicate that management audit:
Our intent is not to duplicate [the Texas management audit]. Our intent is to back up to the functional areas of [GSU] and especially those that have changed so drastically since that study was done. [GSU] has doubled its rate base. It’s put a nuclear unit on that it never had before. That unit is operating. It has a huge operating expense and dominates [GSU’s] books. [GSU] is not paying [dividends]. Those are dramatic changes in [GSU]. And our intent in our audit was to examine the things that are associated with those kinds of changes....
Judgment was rendered on April 18, 1989, decreeing that the commission is authorized to conduct a management audit of GSU and that the costs of the management audit are to be paid by GSU. The judgment further provided:
IT IS FURTHER ORDERED ... that the Commission shall, through its consultants, meet with Gulf States within 30 days in order to narrow the scope of the audit, if appropriate, and avoid replication of the management audit ordered by the Texas Public Service Commission. In the event of any disagreement between the Commission’s consultants and Gulf States as to the scope of the management audit, Gulf States may file an exception to the scope of the audit, and the Commission shall hold hearings, take evidence, and render a decision on any such disagreements.
IT IS FURTHER ORDERED ... that the Commission’s consultants, as part of the audit, are to consider how Gulf States shall best recover the costs of the management audit, and make their recommendations to the Public Service Commission. The Public Service Commission shall issue an order either accepting or rejecting the recommendation of the Commission’s consultant after a contradictory hearing with Gulf States Utilities.
Both the commission and GSU appealed the judgment of the district court to this court, pursuant to La. Const, art. 4, § 21(E). GSU contends that the district court erred in requiring it to pay the costs of the management audit, including attorney fees, in violation of La.R.S. 45:1180-1181 and its right to due process. The commission contests the district court’s decision “insofar as it requires the Commission to limit the scope of the audit and determine in advance the means by which Gulf States may recover its costs.”
The law applicable to judicial review of the commission was set forth by this court in Central Louisiana Electric Co. v. Public Service Commission, 508 So.2d 1361, 1364 (La.1987), where we described our role in the following way:
Initially, as the orders of the Commission are entitled to great weight, they should not be overturned absent a showing of arbitrariness, capriciousness, or abuse of authority by the Commission. Secondly, courts should be reluctant to substitute their own views for those of the expert body charged with the legislative function of rate-making. Lastly, a decision of the Commission will not be overturned absent a finding that it is clearly erroneous or that it is unsupported by the record.
The issues presented for our determination in this appeal are (1) whether the commission may impose the costs of the management audit, including attorney fees, upon GSU under La.R.S. 45:1163.3 and 45:1180-1181 and the due process requirement and (2) whether the trial court was justified in ordering that the commission, through its consultants, meet with GSU to narrow the scope of the management audit and avoid replication of the Texas management audit, and further ordering that the commission and its consultants consider and hold a hearing on how GSU shall best recover the costs of the management audit.
GSU contends that the commission has no statutory authority to impose the costs of the management audit, including attorney fees, upon GSU. We disagree.
*578 La.R.S. 45:1163.3 B empowers the commission to retain consultants and attorneys to assist the commission:
If the staff of the economics and rate analysis division is unable or insufficient to assist the commission in evaluating, reviewing, and representing the commission in matters affecting services and rates charged by public utilities to Louisiana consumers or the judicial review thereof, the commission is empowered to retain other attorneys, engineers, consultants, accountants, or support staff and clerical assistants to assist the economics and rate analysis division.
La.R.S. 45:1180 A authorizes the commission to charge consultants’ fees for an examination to the public utility that is examined:
Whenever the commission makes an examination of the affairs of any person doing a public service or public utilities business in Louisiana concerning matters affecting services and rates charged by such public service or public utilities businesses to Louisiana consumers, all expenses incurred by the commission for services necessary to assist the economics and rate analysis division in conducting such examination, including the expenses and fees of engineers, consultants, accountants, or such other support staff and clerical assistants specially employed to make the examination, shall, at the discretion of the commission, be paid by the person so examined.
La.R.S. 45:1180 B authorizes the commission to retain attorneys or special counsel to represent the commission:
Attorneys or special counsel may be retained by the commission to assist the economics and rate analysis division for the purpose of evaluating and reviewing matters affecting services and rates charged by public utilities to Louisiana consumers and for representing the Public Service Commission in such cases or the judicial review thereof.
The first two sentences of La.R.S. 45:1181 B authorize the commission to certify expenses incurred under La.R.S. 45:1180 for payment by the utility being examined:
Upon the completion of the examination, or while the same is in process, the commission shall certify to the person being examined, the amount of expenses incurred as provided in R.S. 45:1180 through 1183. Upon certification, the person examined shall pay the amount certified to the one thus employed.
Under these statutes, whenever the commission makes an examination of the affairs of a public utility affecting services and rates charged to consumers, all expenses incurred by the commission for services necessary to assist the economics and rate analysis division, including the expenses of consultants and attorneys, shall, at the discretion of the commission, be paid by the public utility.
As indicated in the commission’s press release and Kennedy’s proposal, the goal of the management audit is to lower rates to consumers by reducing GSU’s expenses while maintaining its quality of service. The Texas management audit cost $654,000 but resulted in predicted annual net savings of over thirteen million dollars. Dr. Kennedy testified that he does not intend to duplicate the Texas management audit and that dramatic changes had occurred in GSU since that audit was completed in 1986. Since that time, GSU has doubled its rate base and put a nuclear unit into operation. The nuclear unit has huge operating expenses and dominates GSU’s finances. Kennedy intends to closely examine the changes in GSU to find ways to cut GSU’s expenses and rates to consumers. Kennedy has already studied GSU in connection with the rate case. Moreover, the management audit will affect rates because there is a continuing rate case. Under the district court’s judgment of February 18, 1988 and written reasons of October 11,1989, GSU will obtain large phase-in rate increases in 1990, 1991, and 1992, but the commission retains the power to order just and reasonable rate decreases after a hearing. This rate case was underway when the commission authorized the management audit in the summer of 1988. *579 Accordingly, the management audit is an examination of the affairs of GSU that affects services and rates charged to consumers. Additionally, the costs of the management audit are necessary to assist the economics and rate analysis division. That division was established by La.R.S. 45:1163.3 A. It is undisputed that the commission is incapable of performing the management audit. Mr. Brinkley, the secretary of the commission, testified that there is only one employee in the division. “Counsel for the commission admitted the commission’s ‘economic and rate analysis division’ does not exist in reality.” Cajun Electric Power Cooperative, Inc. v. Louisiana Public Service Commission, 544 So.2d 362, 377 (La.1989) (Cole, J., dissenting in part and concurring in part). The division was under-funded by the legislature, so the only way that the commission could have conducted the management audit was by hiring a consultant such as Kennedy. Accordingly, the commission may impose the costs of the management audit, including attorney fees, upon GSU under La.R.S. 45:1163.3 and 45:1180-1181.
GSU argues that Cajun Electric and South Central Bell Telephone Co. v. Louisiana Public Service Commission, 412 So.2d 1069 (La.1982), require us to reach a different conclusion. We disagree. In Cajun Electric, electrical cooperatives brought a declaratory judgment action against the commission regarding a dispute over the extent of the commission’s jurisdiction. We denied the commission’s claim for attorney fees because the case did not involve a rate-making dispute or a rate-making examination by the economics and rate analysis division of the commission. In South Central Bell, the commission had intervened in a federal suit involving deregulated industries. Although South Central Bell was not a party to the federal suit, the commission tendered a bill to South Central Bell for the commission’s legal expenses in the intervention. We decided that the commission could not recover attorney fees from South Central Bell because the “intervention did not involve an evaluation or review of proposed rate increases.” In Cajun Electric, the attorney fees were incurred in a jurisdictional dispute and in South Central Bell, the attorney fees resulted from the commission’s intervention in a third-party lawsuit. The instant case is clearly distinguishable from these cases. Here, we have attorney fees and consultant expenses in connection with a management audit and an ongoing rate case.
While the commission may impose the costs of the management audit, including attorney fees, upon GSU under La.R.S. 45:1163.3 and 45:1180-1181, the compensation for the consultants and attorneys must be reasonable and commensurate with the value of their services under La.R.S. 45:1181 Á:
The commission shall employ only such engineers, consultants, attorneys'or special counsel, accountants, or clerical assistants as are actually necessary to assist the economics and rate analysis division in conducting the examination. The compensation for such services shall be fixed according to the time actually devoted to the work of conducting the examination and making reports thereon, whether as witnesses before the commission in open hearing, or by written report, under oath, as required by law, or as participants in any judicial review of the examination or reports. The compensation shall always be reasonable and commensurate with the value of the services performed.
If a public utility objects to the legality or the reasonableness of the amount of the expenses, it may take a rule against the commission pursuant to La.R.S. 45:1181 B, which provides in pertinent part:
If the person being examined deems the amount of expenses so certified to be unreasonable or contrary to the provisions of R.S. 45:1180 through 1183, it may, within fifteen days after the receipt of the certificate, take a rule against the commission, to test the reasonableness and legality of the amount of expenses certified to by the commission. This rule shall be tried by preference, and upon appeal shall be given preference in the appellate court, as provided by law for other state cases.
*580 GSU has requested such rules in five amended petitions responding to expenses certified to it by the commission thus far.[2] GSU is entitled to have these rules tried to determine whether the amounts of the certified costs of the management audit are reasonable under La.R.S. 45:1181.
GSU finally argues that allowing the commission to tax the expenses of the management audit upon GSU violates the constitutional prohibitions against deprivation of property without due process of law under U.S. Const, amend. 14, § 1 and La. Const, art. 1, § 2. We find that due process requirements are satisfied by La.R.S. 45:1181 B, which allows GSU to take a rule against the commission before paying the costs of the management audit.
Next, we consider the commission’s contention that the district court infringed upon the commission’s discretion by ordering that the commission, through its consultants, meet with GSU to narrow the scope of the management audit and avoid replication of the Texas management audit, and further ordering that the commission and its consultants consider and hold a hearing on how GSU shall best recover costs of the management audit. We agree with the commission. The trial court has no authority to require the commission and its consultants to narrow the scope of the management audit. The commission’s order that the management audit be performed was not arbitrary or capricious. Hence, the trial court erred in ordering the commission to modify that order. Furthermore, the trial court has no authority to order the commission and its consultants to consider and hold a hearing on how GSU shall best recover the costs of the management audit. If GSU is legally entitled to recover those costs, it will recover them.
DECREE
The judgment of the district court is affirmed insofar as it finds that the Louisiana Public Service Commission is authorized to conduct a management audit of Gulf States Utilities Company and that the costs of the management audit are to be paid by Gulf States Utilities Company. Otherwise, it is reversed. The case is remanded to the district court for a trial of the rules requested in the amended petitions.
COLE, J., concurs in part and dissents in part and assigns reasons.
WATSON, J., dissents from the affirmation of the PSC order.

. GSU filed six amended petitions between August 15, 1988 and March 30, 1989. The second through the sixth amended petitions allege that GSU received invoices from Kennedy and the law firm of Stone, Pigman, Walther, Wittman & Hutchinson that were certified by the commission for payment by GSU. They further allege that the amount of each invoice is unreasonable and contrary to the provisions of La.R.S. 45:1180, et seq. They request that the court issue rules to show cause against the commission why there should not be judgment decreeing that GSU should have no legal obligation to pay the amount of the invoices. The total amount of the invoices is $45,297.58. The commission answered generally denying the allegations of each petition.

. See supra note 1.