HALL, Justice.*
The instant case is a sequel to our decision in Matlock, Inc. v. Louisiana Public Service Comm’n, 622 So.2d 640 (La.1993), in which we affirmed a district court decision rescinding the Louisiana Public Service Commission’s (“LPSC’s”) granting of a certificate of public convenience and necessity to L & B Transportation, Inc. (“L & B”). In the instant case, we are presented with a similar issue of whether the district court erred in rescinding the LPSC’s granting of a new, somewhat more restricted, certificate of public convenience and necessity to L & B. For the reasons that follow, we find the district court erred and reverse.
BACKGROUND FACTS AND PROCEDURAL HISTORY
Since 1986, L & B has operated continuously in this state as a common carrier, hauling liquid chemicals in bulk statewide under a certificate of public convenience and necessity, which the LPSC granted in December 1986 and which this court rescinded in Matlock, supra, in May 1993. The tortu *95 ous six year history of that proceeding is detailed in our Matlack opinion. L & B is a Louisiana corporation having its sole terminal in Port Allen, Louisiana. L & B operates 28 tractors and 55 trailers, of which 17 are rubberlined. None of L & B’s equipment is presently idle. Although L & B also has interstate authority from the Interstate Commerce |2Commission (“ICC”), approximately 65 to 70% of its business is intrastate. L & B currently serves 88 intrastate customers and annually transports 15,000 to 20,000 intrastate loads.
In October 1992, before this court’s Mat-lack decision was handed down, L & B, as a prophylactic measure, applied to the LPSC for a new certificate of public convenience and necessity to transport as a common carrier certain chemical products in bulk in tank vehicles statewide.[1] In February 1993, upon receiving notice that its application was being opposed by twelve existing carriers, L & B restrictively amended its application to exclude generally the transportation of petroleum products.[2] Thereafter, five existing carriers, all out of state corporations having overlapping operating authority with that sought by L & B, persisted in opposing L & B’s application. The five protesting carriers were: Mississippi Chemical Express, Inc. (“MCX”); Younger Brothers, Inc. (“Younger”); Matlack, Inc. (“Matlack”); Groendyke Transport, Inc. (“Groendyke”); and DSI Transports, Inc. (“DSI”) (hereinafter collectively referred to as “Protestants”).
Desiring to delay the LPSC hearings on L & B’s new application until after this court rendered its decision in Matlack, Protestants filed a motion with the LPSC seeking to stay the scheduled hearings; the LPSC denied that motion. Protestants then filed a motion for a restraining order with the Nineteenth Judicial District Court. The district court granted that motion, restraining L & B and the LPSC from proceeding with the public hearings on L & B’s application for certification. In response, L & B filed an emergency writ application with this court. On May 18, 1993, the day the hearings were to commence, we granted L & B’s writ | ^application, overturned the district court’s decision and ordered that the hearings be allowed to continue. The next day, May 19, 1993, the hearings were commenced before the LPSC hearing examiner on L & B’s application but, being only partially completed, were adjourned until June 1993.
Meanwhile, on May 24, 1993, we rendered our decision in Matlack, affirming the district court’s decision rescinding L & B’s original common carrier certificate. We concluded that the evidence in the record was insufficient to satisfy the requisite burden of proof under LSA-R.S. 45:164, i.e., that the public convenience and necessity (“P, C & N”) would be materially promoted by the issuance of the additional certificate.[3] Howev *96 er, like the district court, we stayed the effect of our decision pending our ruling on L & B’s application for rehearing, allowing L & B to continue operating as a common carrier until our decision became final.
In Matlack, we also addressed a “thorny” procedural issue that is pertinent here. That issue involved L & B’s request that we remand to the district court to allow it to supplement the record with evidence of its six year operating history. L & B contended that such evidence would clearly establish a presently existing P, C & N for its service and would thus justify, albeit after-the-fact, the LPSC’s issuance of the original certificate. In refusing to allow such a nunc pro tunc[4] justification of the prior granting of authority, we expressly recognized that L & B was not without a remedy. Defining that remedy, we instructed that L & B could file a successive application with the LPSC, offering its six year operating history in support to establish a present public need and demand for its service. Matlack, 622 So.2d at 649, 661.
On June 8 and 9,1993, the hearings before the LPSC hearing examiner were continued on L & B’s new application. At those hearings, notice was taken of the Matlack decision, and, following our instructions, L & B centered its ease on its prior six year operating history. ^Particularly, L & B, through the testimony of its president and co-owner, Bob Connors, presented evidence regarding its operations over the six years spanning 1987 through 1993. Capsulizing Mr. Connors’ testimony, the Hearing Examiner stated in his report:
[Connors’] company has grown the last six years although he has not actively solicited business. His customer base has grown, as has revenues and equipment. Loads per year have also grown the last six years, with 10 tractors and 37 trailers being added during this time. All trailers are company-owned and all tractors leased. If this application is approved, he would definitely start actively soliciting additional business. 30 drivers are currently being provided by TMI and are paid by TMI.... Although he has recorded losses for 1990 and 1992, with profit in 1991, he feels the losses were due to high financing of new equipment. 1993 will be a profitable year for L & B.
More precisely, the record reflects that over the six year span, L & B’s revenues increased from $1.4 to $3 million; its payroll tripled; its tractor fleet grew from 13 to 23; its trailer fleet grew from 24 to 61; and its intrastate customer base grew from 5 to 88.[5]
L & B also presented testimony of six of its current intrastate customers; particularly, the six customers that appeared at the hearing on L & B’s behalf were: Ciba-Geigy Corp.; Sulfuric Acid Trading Co. (“SATCO”); Sid Richardson Carbon Co. (“Richardson”); LCI Limited (“LCI”); Chemical Distributors, Inc. (“CDI”); and Onyx Product Sales, Inc. (“Onyx”). All the shippers expressed that L & B was their primary public carrier (ie. it provided 85% to 100% of their intrastate transportation needs) and that they had used L & B for a substantial period of time (ie., all of them for over a year, some of them for a number of years and some of them had used solely L & B since they started operating in Louisiana). Some of the shippers indicated that because of their need for specialized equipment (ie., primarily rub-berlined trailers) and service (short lead time, ie., less than 24-hour notice), other carriers were unable to meet their needs; however, L & B was able to provide them *97 with such specialized equipment and service and to dedicate its equipment to transporting their products. Nonetheless, all the shippers admitted that the service provided by existing intrastate carriers was “reasonably satisfactory.”
All the shippers expressed their extreme satisfaction with, and rebanee on, L & B’s superior service. Briefly, we quote the following statements the shippers’ representatives made regarding L & B’s superior service. SATCO’s representative testified that L & B “earned” his |scompany’s business because of its good response time on the immediate, “spot” service requests. Both Richardson’s and LCI’s representatives testified that L & B’s service was “absolutely essential” to their companies’ operations. Richardson’s representative further testified that L & B is a “very reliable carrier.” CDI’s representative testified that “[i]f something would happen to L & B, my decision or my vote would be that we put on another truck because I don’t believe anybody could handle it on a short basis.” Onyx’s representative testified that his company was satisfied with L & B because of “their concern for [his] business.” Onyx’s representative further testified that he had not experienced many service failures because L & B has been there to take care of his company’s needs. Lastly, all the shippers testified that L & B’s certification would be beneficial to their companies.
Protestants presented company representatives as witnesses in opposition to L & B’s application. Protestants’ representatives’ testimony, as the district court noted, was all essentially the same: “[t]he representatives testified that the available traffic shared among the existing carriers will be further diluted if L & B’s common carrier certificate is granted. This will cause the carriers, most of which have an overabundance in capacity already, to suffer even more. They testified that they, as common carriers, were agreeable to handling the transporters’ business and did possess the equipment necessary to realize their needs.” Simply put, Protestants all contend that the certificate should not be granted for basically the same reasons: no additional carriers are needed at this time; they have the authority, capacity, equipment and personnel to provide, and are willing to provide, the service that L & B seeks certification to provide; and granting the certification will further dilute an already depressed market, thereby diverting revenues from existing carriers. Finally, several Protestants indicated that they have made substantial investments in their intrastate operations in Louisiana which they want to protect.
After considering the evidence presented, the LPSC hearing examiner recommended that L & B’s application for a restricted certificate be granted. On July 9, 1993, before this court’s judgment in Matlack became final, the LPSC, in a split three-to-two decision, granted L & B the certificate at issue here, finding that “the public convenience and necessity require, and would be materially promoted by the granting of the authority sought, as restrictively amended.”
1 eProtestants timely sought judicial review of the LPSC’s decision in the Nineteenth Judicial District Court pursuant to LSA-R.S. 45:1192. In their petition, Protestants alleged that the LPSC’s decision was erroneous in at least two respects: (i) L & B failed to meet its burden of proving that the P, C & N would be materially promoted by the issuance of the certificate; and (ii) existing carriers, including Protestants, “have sufficient equipment, have access to it in their respective systems, and/or can obtain the same and are willing and able to provide the transportation services testified to by the supporting shippers at the public hearing.” The LPSC answered the appeal, generally denying all the allegations of the petition. L & B intervened, uniting with the LPSC in opposing the appeal. The parties submitted the case on briefs and the record.
In January 1994, the district court rendered its decision reversing the LPSC. From that decision, L & B and the LPSC timely perfected the instant appeal to this court pursuant to La. Const. Art. 4, § 21(E). For the reasons that follow, we find that the district court erred in overturning the LPSC’s grant of the certificate of P, C & N at issue to L & B.
*98 PARTIES’ CONTENTIONS
L & B and the LPSC urge that the district court erred in two respects. First, they urge that the district court erred by reweighing the evidence and substituting its judgment for that of the LPSC, thereby usurping the LPSC’s function and deviating from the proper standard of review. Second, they urge that the district court erred in failing to mention, much less to factor into its analysis, the strong evidence provided by L & B’s past six year operating history, despite Matlack ⅛ express recognition that such evidence would be relevant in the event L & B filed a successive application for certification to establish present public need and demand for L & B’s service.
Conversely, Protestants contend that the district court’s decision is correct and that Matlack dictates it be affirmed for several reasons. First, they urge that L & B’s evidence in this case is even weaker than in Matlack, having presented eleven supporting shipper witnesses there and only six here.[6] Second, they urge that while Matlack holds that L & B’s operating 17history is admissible and relevant, L & B’s should not be allowed to use its operating history alone to bootstrap its way into certification without ever having met the requisite burden of proof, i.e., establishing that the P, C & N would be materially promoted by its certification. Third, they contend that the evidence presented by L & B’s witnesses was insufficient to meet the requisite burden of proof, as outlined in Matlack, because such evidence established neither public need nor inadequacy of existing service, but rather established simply shipper “preference.” Finally, they urge that since L & B concedes it has not actively solicited business during its past six years operations as a “de facto” common carrier and since L & B admits that, if certified, it will actively solicit business, L & B’s past operations do not accurately depict the effect its entrance in the market as an “aggressive,” competing carrier will have on Protestants and other existing carriers.
STANDARD OF REVIEW
Evaluating whether an applicant has met the requisite burden of proving P, C & N under LSA-R.S. 45:164 is a matter within the LPSC’s sound judgment and discretion. Matlack, 622 So.2d at 650. Being an exercise of discretionary authority, the LPSC’s determination of P, C & N is accorded great weight. Florane v. Louisiana Public Service Comm’n, 433 So.2d 120, 123 (La. 1983); Dreher Contracting & Equipment Rental, Inc. v. Louisiana Public Service Comm’n, 396 So.2d 1265, 1267 (La.1981). Indeed, such determinations are clothed with a presumption of validity. Louisiana Oilfield Carriers Ass’n v. Louisiana Public Service Comm’n, 281 So.2d 698, 709 (La.1973); see also Gulf States Utilities Co. v. Louisiana Public Service Comm’n, 556 So.2d 573 (La. 1990). The party attacking such determination thus has the burden of proving its invalidity. Louisiana Oilfield Carriers Ass’n, supra.
As we have recognized, upon judicial review, a court will overturn the LPSC’s determination of P, C & N only if it is based on an error of law, or if it is arbitrary and capricious, that is, “one which the Commission could not have found reasonably from the evidence.” Miller Transporters, Inc. v. Louisiana Public Service Comm’n, 518 So.2d 1018, 1020 (La.1988) (collecting cases); Matlack, 622 So.2d at 650 (collecting cases). Stated otherwise, “[a] Commission’s Order should be upheld unless it is arbitrary and capricious or a clear abuse of power.” Herman Brothers, Inc. v. Louisiana Public Service Comm’n, 564 So.2d 294, 297 (La.1990) (collecting cases). The LPSC’s determination is arbitrary and capricious I «only when the evidence in the record does not and could not reasonably support it. L & B Transport Co. v. Louisiana Public Service Comm’n, 602 So.2d 712, 714 (La.1992); Ken-Go Services, *99 Inc. v. Louisiana Public Service Comm’n, 483 So.2d 141, 142-43 (La.1986).
In reviewing the LPSC’s determination, it is not our role as a reviewing court to reweigh the evidence, to rejudge the credibility of the witnesses or to substitute our findings for those of the LPSC. Southern Message Service, Inc. v. Louisiana Public Service Comm’n, 554 So.2d 47, 56 (La.1989); B & M Trucking, Inc. v. Louisiana Public Service Comm’n, 353 So.2d 1323, 1328 (La. 1977) (noting that the case might have been decided differently, but declining to substitute court’s judgment for commission’s). When the testimony is conflicting, “the reasonable evaluations of credibility and reasonable inferences of fact by the commission should not be disturbed upon review, even though the court may feel that its own evaluations and inferences are as reasonable.” Southern Message Service, 554 So.2d at 56 (citing Hearin Tank Lines, Inc. v. Louisiana Public Service Comm’n, 247 La. 826, 174 So.2d 644 (1965)). We do not sit as an appellate LPSC. In short, our role in judicially reviewing the LPSC’s determinations of P, C & N is quite narrow: if the determination is reasonably supported by the evidence in the record, we must affirm. Scotty’s Vacuum Service, Inc. v. Louisiana Public Service Comm’n, 450 So.2d 1303, 1304 (La.1984); B & M Trucking, 353 So.2d at 1326-27.
Mindful of our limited scope of review, we must determine whether the LPSC, acting reasonably on the evidence before it, including L & B’s six year operating history, could have determined that issuing L & B a common carrier certificate would materially promote the P, C & N; and, correspondingly, whether the district court judge erred when he held that the LPSC did not so act and reversed the LPSC’s determination.
PUBLIC CONVENIENCE AND NECESSITY (“P, C & N”)
Under LSA-R.S. 45:164, L & B, as applicant, had the burden of clearly establishing that the P, C & N would be materially promoted by issuing the certificate it requested. While P, C & N is not statutorily defined, this court has jurisprudentially given meaning to this concept, borrowing from the federal ICC jurisprudence. CTS Enterprises, Inc. v. Louisiana Public Service Comm’n, 540 So.2d 275, 281 n. 9 (La.1989); Louisiana Tank Truck Carriers, Inc. v. Louisiana Public Service Comm’n, 549 So.2d 850, 853 (La. 1989). A common thread running through the jurisprudence is that P, C & N is a dynamic and flexible concept, which |3is not susceptible to rigid or precise definition, but rather must be determined on a ease-by-case basis. Matlack, 622 So.2d at 650; Florane v. Louisiana Public Service Comm’n, 433 So.2d 120, 123 (La.1983).
Matlack outlines in detail the precepts to be applied in making that case-by-case determination. Prominent among those precepts is the requirement that an applicant establish the inadequacy of existing service; this is because the inadequacy of existing service is often the sole basis for establishing the public need for the proposed service. See Matlack, 622 So.2d at 657 n. 16; AAA Cooper Transp. v. Louisiana Public Service Comm’n, 623 So.2d 1262, 1266 (La.1993) (defining “public need” as existing when “there is an identifiable public need for a transportation service for which there exists no adequate public service”).[7] Yet, when, as here, an applicant has been operating in the market place as a common carrier, existing service, by definition, includes the service applicant is providing. Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646, 653 (D.N.H.1964). It follows then that in this *100 context it is illogical to impose on the existing-carrier applicant the requirement of establishing the inadequacy of existing service. Indeed, even Protestants concede in their brief the logical impossibility of L & B establishing the inadequacy of existing service, given that L & B has been operating as a common carrier for a substantial period.
Because of such nonsensical proof problems, courts have relieved the existing-carrier applicant of the burden of establishing the inadequacy of existing service. See Dilts Trucking, Inc. v. Peake, Inc., 197 Neb. 459, 249 N.W.2d 732, 737 (1977); Application of Preisendorf Transport, Inc., 169 Neb. 693, 100 N.W.2d 865, 875 (1960). Courts have also permitted the existing-earrier applicant to establish public need for its services by introducing evidence of its prior successful operations. Matlack, 622 So.2d at 649, 661 (citing Guandolo, Transportation Law 65 (1965)); Allard Express, Inc. v. United States, 263 F.Supp. 171, 174 (W.D.Wis.1966); Crichton v. United States, 56 F.Supp. 876, 879-80 (S.D.N.Y.1944), aff'd, 323 U.Sji0684, 65 S.Ct. 559, 89 L.Ed. 554 (1945) {per cu-riam); Matador Service, Inc. v. Missouri Basin Well Service, Inc., 367 N.W.2d 749 (N.D.1985); W.C. McQuaide, Inc. v. Pennsylvania Public Utility Comm’n, 137 Pa. Commw. 282, 585 A.2d 1151, 1156 (1991); Dilts Trucking, 249 N.W.2d at 737; Application of Andrews Van Lines, Inc., Norfolk, 180 Neb. 764, 145 N.W.2d 584 (1966); Preisendorf Transport, 100 N.W.2d at 875; but cf. McTyre v. Bevis, 300 So.2d 1 (Fla.1974); see also Truck Transport Inc. v. I.C.C., 631 F.2d 1023 (D.C.Cir.1980) (finding past operations under temporary authority relevant in determining whether to grant permanent authority). Indeed, successful past operations under some color of right gives rise to a presumption of public need for continuance of such operations. Crichton, 56 F.Supp. at 880; Dilts Trucking, 249 N.W.2d at 739; Canada v. Peake, Inc., 184 Neb. 52, 165 N.W.2d 587, 590 (1969) (noting that protestants have burden of rebutting this, presumption of present P, C & N created by successful past operations).
In this regard, L & B and the LPSC emphasize Mattack’s instruction that evidence of L & B’s past six year operating history can be used to establish a present public need and demand for its service. 622 So.2d at 649, 661. Moreover, they point out that because of the unique procedural posture of this case, L & B’s past operations provide a gauge against which to measure the actual nature, quality, quantity and type of service it will provide and the actual effect of its entry into the market on existing carriers. Protestants counter that L & B should not be allowed to rely on its past operations to bootstrap its way into common carrier authority without establishing the requisite P, C & N. Protestants further counter that the district court decision is correct and that Matlack dictates it be affirmed for several reasons.
Protestants first tout the fact that L & B’s supporting shipper witness list is shorter here than in Matlack and suggest that somehow leads to the inevitable conclusion that L & B’s case is weaker here. Protestants’ reasoning is unpersuasive. The substance of the shipper support, not the numerical quantity of it, is determinative. Matlack, 622 So.2d at 657 n. 17 (citing Guandolo, Transportation Law 58 (1965)). The substance of L & B’s shipper support is sharply different here than in Matlack.
In Matlack, as discussed above, we declined to consider L & B’s six year track record and limited our review to the evidence presented before the LPSC. As a result, we had before us a very limited record, consisting of L & B’s short span of operations as a contract carrier and Inwhat we labelled as mere conclusionary, unsupported testimonials of supporting shippers regarding the service L & B proposed to provide. Matlack, 622 So.2d at 654.
In stark contrast, we have before us here a detailed record consisting of L & B’s past six years of successful operations as a common carrier. During that period, L & B has attracted business and increased its revenues, payroll, equipment and customer base. More precisely, L & B presented evidence that during that period its customer base grew to eighty-eight current intrastate customers, six of whom testified as supporting shippers. All the supporting shippers testi *101 fied that L & B is their primary carrier and has been for some time, that the service L & B has provided them is superior, that they have come to rely and depend upon L & B’s superior service and that they desire to continue using L & B’s service in the future.
Another significant difference between the present case and Matlack is the evidence presented regarding the effect L & B’s certification would have on existing carriers. In Matlack, the opposing carriers presented un-contradicted testimony that L & B’s certification would have a material adverse effect on their operations and the service they provide to the public. 622 So.2d at 655. Specifically, the opposing carriers testified that “their costs were rising and their revenues dwindling, that they had idle equipment, and that certification of a new carrier would cause further damage to their already depressed businesses.” Matlack, 622 So.2d at 661.
Conversely, as noted above, because of the unique procedural posture of the present case, the record contains actual evidence of the lack of any material adverse effect on existing carriers from L & B’s entry into, and participation in, the market for six years. As L & B put it, Protestants have suffered neither a decline in revenues, nor an increase in idle equipment over L & B’s six year operating history. Quite the contrary, the record reflects that Protestants, as a group, have experienced an increase in revenues and have recently acquired additional equipment, logically negating any claim of idle equipment.[8] L & B is not a new carrier entering the market; rather, L & B is an existing market participant and has been one for quite some time. Hence, it cannot be said that granting L & B’s certificate will materially alter the existing competitive situation. See Application of Andrews Van Lines, 145 N.W.2d at 587 | ^(noting that when applicant is an existing carrier, granting of application does not change competitive situation).
Taking issue with the latter eviden-tiary point, Protestants urge that L & B’s past operating history does not provide a relevant gauge against which to measure the harm to existing carriers. Continuing, they argue that since L & B concedes that it has not actively solicited business during that period, but that, if certified, it will begin doing so, L & B’s past operations as a “de facto” common carrier do not accurately depict the effect of its entrance into the market as an “aggressive,” competing carrier. Answering that argument, we note that merely because a carrier’s certification could result in an increase in competition — that is, traffic diversion and a concomitant loss of revenues — is not a sufficient basis, in itself, to defeat an application for which public need has otherwise been shown. Faulk-Collier Bonded Warehouse v. Louisiana Public Service Comm’n, 236 La. 357, 107 So.2d 668, 669 (1958); see also Transway, Inc. v. Louisiana Public Service Comm’n, 253 La. 933, 221 So.2d 53 (1969) (rejecting similar argument by protestants regarding alleged “more vigorous[ ]” competition by proposed transferee of common carrier certificate).
Bolstering their argument regarding the lack of any material adverse effect on existing carriers, L & B and the LPSC cite L & B Transport Co. v. Louisiana Public Service Comm’n, 602 So.2d 712 (La.1992). That case presents an interesting reverse twist of the facts. There, we affirmed the LPSC’s granting of a common carrier certificate to MCX, one of the Protestants in the instant case, over the objection of, among other protesting carriers, L & B. In so doing, we noted that “L & B, which has focused on transportation of chemicals, had almost no idle equipment at the time of the hearing.” L & B Transport, 602 So.2d at 717. Significantly, we held that the P, C & N would be materially promoted by the addition of MCX as a new carrier into the market at a time when L & B was an active market participant and that any harm to existing carriers would be outweighed by the benefits to the shipping public.
Still another difference between the instant ease and Matlack is that the scope of the certificate L & B seeks here is narrower. The relevance of this difference is evidenced *102 by our emphasis in Matlack on the broad base of the certificate L & B was seeking, describing it as a “broad based application for authority to transport almost any type of bulk liquid commodity statewide,” and on the comparatively limited scope of the supporting shippers’ testimony, | ^describing such testimony as limited to a “handful of commodities.” Matlack, 622 So.2d at 667. On the other hand, the certificate L & B is seeking here is a more restricted one. Unlike the certificate at issue in Matlack, the certificate at issue here contains a general, petroleum products exclusion.[9] In fact, in granting the certificate, the LPSC expressly noted the more restricted scope of the certificate at issue.
In sum, we determine that Mat-lack does not dictate the result here because the scope of the certificate at issue is more restricted, the unique procedural posture of this case permits the gauging of the actual effect of L & B’s entry into the market on existing carriers, and the overall evidentiary basis of the instant case is entirely different from Matlack. We further determine, based on our review of the record, that there is ample evidence to support the LPSC’s finding that L & B’s past operations establish a present public need for its proposed service.
CONCLUSION
Given L & B’s six year track record of successful operations; the supporting shippers’ testimony regarding L & B’s superior service, their reliance on such service for a substantial period of time and their desire to continue using such service; the minimal effect, if any, that granting L & B’s certificate will have on existing carriers, including Protestants; the severe harm that would result to applicant, L & B, from overturning the LPSC’s determination and revoking its common carrier certificate; our holding in L & B Transport, affirming the LPSC’s grant of a common carrier certificate to MCX as a new carrier at a time when L & B was actively participating in the market; and the restricted scope of the certificate at issue, we find the record sufficient to reasonably support the LPSC’s determination that granting L & B the certificate at issue would materially promote the P, C & N and that the harm, if any, to Protestants and other existing carriers is outweighed by the beneficial effect resulting from a grant of the certificate to L & B. Accordingly, we find that the district court erred in reversing that determination.
I uDECREE
For the reasons assigned, the judgment of the district court overturning the determination of the Louisiana Public Service Commission granting a common carrier certificate to L & B Transportation, Inc., is reversed and set aside. The order of the Louisiana Public Service Commission approving the application for a common carrier certificate, as restrictively amended, to L & B Transportation, Inc., authorizing the transportation of certain chemical products in bulk in tank vehicles statewide is reinstated and affirmed.
REVERSED.
LEMMON, J., dissents.

 Ortique, J., not on panel. Rule IV, Part 2, § 3. Chief Judge Charles A. Marvin of the Court of Appeal, Second Circuit, sitting for Dennis, J.

. L & B's new application sought authority for the following:
Transportation of all chemical and/or petroleum products, hazardous and/or non-hazardous, liquid and/or dry, in bulk, in tank vehicles only, statewide.
Restricted against the transportation of oilfield equipment, materials and supplies.
Restricted against the transportation in vacuum tank equipment.
Restricted against the transportation of molasses.

. The amendment restricted against the transportation of the following commodities:
Gasoline; Kerosene, Tractor Fuel, Turbo Fuel, Jet Fuel, Petroleum Distillate Fuel Oil, Nos. 1, 2 and 3, Diesel Fuel; Naphthas and Solvents and Naphtha Distillates; Residual Fuel Oil, Nos. 4, 5 and 6, Bunker Fuels; Butane, Bu-tene, Isobutane, Mixture of Butane and Propane, Propane Lubricating Oil, Petroleum Oil, N.O.I. (not otherwise indicated); Oil, Drilling Additive; Petroleum Crude Oil; Asphalt and Asphalt Compounds; Emulsified Asphalt; Ethane; Benzene; Ammonia; Dty bulk commodities including but not limited to chemicals, cement, lime, fly ash, flue dust, mineral filler, drilling mud, fertilizer; Hazardous and nonhazardous waste; Toulene and zylene except transportation of these commodities is authorized for the account of Ceiba Geigy only.

.LSA-R.S. 45:164 provides in pertinent part as follows:
No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted *96 over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby. (Emphasis supplied).

. By nunc pro tunc is meant "[n]ow for then." Black’s Law Dictionary 964 (5th Ed. 1979). Our refusal in Matlack to allow L & B to use its six year operating history was based on the well-settled rule that a determination of P, C & N must be based on the circumstances existing at the time the application is applied for. Matlack, 622 So.2d at 649. It follows that while the six year operating history could not be considered on the prior application, it was properly considered on the present one.

. In this regard, Protestants, in their brief filed in the district court, "acknowledge[d] that L & B is a fit, willing and able carrier as evidenced by its six (6) year operations as a de facto common carrier and before that a contract carrier.” Given that admission, we do not address the issue of L & B’s fitness.

. While Protestants contest the relevance of one of the shipper witnesses, contending that shipper’s product is outside the scope of L & B's restricted application, the LPSC hearing examiner refused to address that issue. We likewise find it unnecessary to reach the issue. In this regard, we also note that L & B contends it would have put on two additional supporting shipper witnesses, but was impeded from doing so as a result of the restraining order and the two witnesses' unavailability to appear at the hearing when it commenced a day late.

. Nonetheless, as we recognized in Matlack, inadequacy of existing service is only one of the factors to be considered in determining P, C & N and is not a prerequisite to obtaining certification. 622 So.2d at 657-58; Nashua Motor Express, Inc. v. United States, 230 F.Supp. 646 (D.N.H.1964). Other relevant factors include "the desirability of competition, the desirability of different kinds of service, and the desirability of improved service.” Nashua, 230 F.Supp. at 652. Hence, proof that an applicant will provide a unique or novel service that is not provided by other carriers can be used to establish public need. Matlack, 622 So.2d at 658. While L & B attempted to establish that its providing of rub-berlined trailers is a specialized service since other carriers maintain so few of such trailers in this state, we find it unnecessary to decide that issue as we find its prior operations sufficient to establish public need here.

. While, as the district court notes, Protestants offered some conflicting evidence on this point, it is the LPSC's, not the courts', function to weigh the conflicting evidence. See Southern Message Service, Inc. v. Louisiana Public Service Comm’n, 554 So.2d 47, 56 (La.1989)

. See Note 2, supra.