hKNOLL, Justice.*
This case raises the issue of whether the Public Service Commission (the “PSC”) acted arbitrarily or capriciously when it granted Fleet Brian Easley d/b/a A-Plus Moving (“Easley”) and Roy M. Perez d/b/a Arthur Perez Moving Professionals (“Perez”) common carrier certificates pursuant to its authority to regulate common carriers of household goods. After an adverse judgment from the district court, the Louisiana Household Goods Carriers (“HGC”), as a protestant to the applications, appeals directly to this Court pursuant to Article IV, Section 21(E) of the Louisiana Constitution.
1 ¿PROCEDURAL HISTORY
Easley and Perez each applied for common carrier certificates. Easley applied for a certificate to transport household goods within the twenty-five mile radius of Baton Rouge limited to the use of one straight truck. Perez applied for a certificate to transport household goods within a one-hundred mile radius of New Orleans; however, at the hearing, Perez restricted the application to moves originating in Orleans and St. Tammany Parishes to destinations in St. Tammany and St. Charles Parishes. Hearings were held in both cases and testimony from both the applicants and HGC was submitted. The administrative law judge, who heard both cases, recommended to the PSC that it grant Easley’s application, but deny Perez’s application. Perez personally appeared before the PSC to argue his case. The PSC granted both applications. HGC appealed the order to the 19th Judicial District Court. With the benefit of our recently decided case of Louisiana Household Goods Carriers v. Louisiana Public Service Commission, 99-3184 (La.6/30/00), 762 So.2d 1081 (hereinafter Pontchar *547 train ), which concerned similar issues,[1] the trial court affirmed the PSC.
In this appeal, HGC argues that the district court erred by affirming the decision of the PSC because there is no evidence in the record to sustain a grant of authority by the PSC to either Easley or Perez, neither Perez nor Easley had competent evidence because the witnesses did not provide any evidence with probative value, and the PSC abused its authority by granting certificates to Easley and Perez because there was no showing of public convenience and necessity. The 13PSC, on the other hand, argues that the appeal is without merit and that the PSC’s orders granting certificates to Easley and Perez are fully supported by the facts in the record. Additionally, the PSC argues that it did not act arbitrarily or capriciously because public convenience and necessity were materially promoted by the granting of the restricted applications to Easley and Perez.
Law and Analysis
The Louisiana Legislature has declared that businesses that operate motor vehicles for hire as common carriers of household goods are businesses affected with a public interest. La.Rev.StatAnn. § 45:161. A common carrier is essentially a business or individual engaged in the business of transporting, among other things, household goods and charging for that service. See La.Rev.StatAnn. § 45:162(5). Common carrier certificates are issued by the PSC pursuant to La.Rev. StatAnn. § 45:164 which provides, in pertinent part:
[N]o motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby.
LaRev.StatAnn. § 45: 164(A).
Thus, the PSC will issue a certificate to a motor carrier after giving notice to competing carriers, holding a public hearing, and determining that the public convenience and necessity (“PC & N”) require the certificate to be issued. La.Rev.Stat. AnN. § 45:164; Pontchartrain, 99-3184 at p. 2-3, 762 So.2d at 1085; Matlock, Inc. v. Louisiana Pub. Serv. Comm’n, 622 So.2d 640, 649 (La.1993).
|4PC & N is a dynamic and flexible concept that is not susceptible to a rigid or precise definition; PC & N must be determined on a case-by-case basis. Pontchartrain, 99-3184 at p. 3, 762 So.2d at 1085; Matlack, 622 So.2d at 650. It is within the PSC’s sound judgment and discretion to evaluate whether an applicant met the requisite burden of proving PC & N. Mississippi Chem. Exp., Inc. v. Louisiana Pub. Serv. Comm’n, 94-0440 at p. 7 (La.5/23/94), 637 So.2d 93, 98. The PSC’s determination is accorded great weight as *548 it is an exercise of the PSC’s discretionary authority. Id. (citing Florane v. Louisiana Pub. Serv. Comm’n, 438 So.2d 120, 123 (La.1983); Dreher Contracting & Equip. Rental, Inc. v. Louisiana Pub. Serv. Comm’n, 396 So.2d 1265, 1267 (La. 1981)). Indeed, “[t]he general rule is that a regulatory body may use its own judgment in evaluating evidences as to a matter within its own expertise.... ” Baton Rouge Water Works Co. v. Louisiana Pub. Serv. Comm’n, 342 So.2d 609, 611 (La.1977). The determinations made by the PSC are accorded a presumption of validity and the party who attacks the determination has the burden of proving its invalidity. Id. (citing Louisiana Oilfield Carriers Ass’n v. Louisiana Pub. Serv. Comm’n, 281 So.2d 698, 700 (La.1973)).
A reviewing court will not overturn a PSC determination of PC & N unless the determination is based on an error of law, or unless it is arbitrary or capricious. Id. (citing Miller Transporters, Inc. v. Louisiana Pub. Serv. Comm’n, 518 So.2d 1018, 1020 (La.1988); Matlack, 622 So.2d at 650). A PSC determination “is arbitrary and capricious only when the evidence in the record does not and could not reasonably support it.” Mississippi Chem. Exp., 94-0440 at p. 7-8, 637 So.2d at 98. When reviewing PSC determinations, reviewing courts should not re-weigh the evidence or re-judge the credibility of the witnesses or substitute their findings for those of the PSC. Pontchartrain, 99-3184 at p. 3-4, 762 So.2d at 1085 (citing Mississippi Chem. Exp., 94-0440 at p. 7-8, 637 So.2d at 98). Rather, reasonable inferences of fact and of credibility made by the PSC should not be overturned on review even though the reviewing court may reasonably disagree. Id. Thus, if the PSC’s determination is reasonably supported by the record, the reviewing court must affirm. Id.; Mississippi Chem. Exp., 94-0440 at p. 8, 637 So.2d at 99; Scotty’s Vacuum Serv., Inc. v. Louisiana Pub. Serv. Comm’n, 450 So.2d 1303, 1304 (La.1984); B & M Trucking, Inc. v. Louisiana Pub. Serv. Comm’n, 353 So.2d 1323, 1328 (La.1977). When, as in this case, there are existing carriers, the burden is on the applicant to show that public convenience and necessity require the issuance of the certificate. La.Rev.StatAnn. § 45:164; Matlack, 622 So.2d at 656.
This Court has set down a two-prong test for determining whether an applicant has met his burden of showing PC & N in common carrier certificate cases:
(A) applicant must prove that the service it offers is required by public convenience and necessity by establishing that:(l) its proposed operation will serve a useful public purpose for which there is a public need or demand; (2) existing carriers cannot and will not serve this public purpose as well as applicant; and (3) applicant’s new operation can serve this public purpose without endangering or impairing existing carriers’ operations contrary to the public interest; and (B) applicant must further establish clearly that its proposed new operation will materially promote the public convenience and necessity.
Matlack, 622 So.2d at 655-56 (citing L & B Transp. Co. v. Louisiana Pub. Serv. Comm’n, 602 So.2d 712, 714 (La.1992); Gulf Coast Pre-Mix Trucking v. Louisiana Public Service Comm’n, 336 So.2d 849, 854 (La.1976)) (emphasis in original). This test is applicable not only in commodities cases, but also in household goods cases and requires an extensive review of the record. Normally, household goods cases are close cases due to the type of proof that is submitted. The two cases sub judice are no different; however, given the deference to which we accord PSC determinations within its expertise, we *549 cannot say that the PSC acted [^arbitrarily or capriciously when it granted Easley and Perez restricted authority to transport household goods.
Requikement of Publio Convenienoe & Necessity
Easley testified that he was employed with Weekend Movers of Baton Rouge in late 1995 and 1996 where he worked fifty to sixty hours a week and sometimes more. While working with Weekend Movers, a three person operation, Easley gained experience in various aspects of the moving business including business management, actual moving, and customer relations. Easley occasionally answered the telephone and scheduled appointments and moves for customers. Easley gained personal knowledge of the demands placed on a moving business and had to turn down business numerous times, approximately three or more moves per month, because they were too busy. At the time of the hearing, Easley did not have a business office or a truck; however, he had placed his name on several waiting lists for trucks and was in advanced stages of securing office space in Baton Rouge.
One of Easley’s witnesses, Becky Fuller, testified that Easley knew how to handle huge antiques. Another witness, Crystal Brown, testified that she needed to move on short notice and could not find a moving company to move her on the day that suited her. Rather, she had to wait almost a week before the move could be scheduled. The move was actually done by a moving company without the proper certificate. Dan Nesom testified that Livingston Parish was experiencing rapid growth in 1995 and 1996. Easley added that, through his experience, he noticed increased construction in East Baton Rouge Parish and the surrounding parishes which indicates that a there is going to be a higher demand for moves in those places.
In opposing Easley’s application, HGC presented evidence that tended to show that the existing intrastate certified moving companies could satisfy public demand. |7Each of its eight witnesses represented large moving companies most of which make interstate moves and all of which, save one, operate statewide. Each one testified that the status quo adequately served the public’s moving needs and that no more certificates needed to be issued. HGC attempted to show that there was no need for more certificated movers by presenting undocumented testimony regarding their utilization rates.[2]
Howard Taylor of A-l movers testified that eighty-seven percent of his equipment was idle during the slow months. On average, however, A-l’s equipment was only ten to fifteen percent idle. Given these numbers, A-l Movers probably ran at or close to one hundred percent of its equipment during the busy season because it had to make up for its poor utilization rate over the slow months to reach a yearly average of ten to fifteen percent underuti-lization. Howard Taylor’s testimony cor *550 roborates Crystal Brown’s testimony regarding the difficulty of finding a moving company to execute short notice moves in the Baton Rouge area, or at least the fifteen miles outside of the exempt radius. Moreover, the testimony of Doug Pritch-ard of Student Movers, a witness for HGC, shows that of his three trucks, two were running almost all of the time. The third truck sat idle most of the time; the reason why the truck sat idle is the subject of conflicting testimony. Testimony indicates that the third truck could have been idle for lack of business or because Doug Pritchard wanted to have a truck sitting as a spare in case one of the other trucks broke down. | sThe PSC could have reasonably interpreted the testimony to indicate that the idle truck was a backup. Peter Weil of Associated Moving testified that his average yearly utilization rate was about eighty percent. He also testified that the utilization rate would be higher over the summer months, the peak of the moving season.
The facts surrounding Perez’s application are similar to those surrounding Eas-ley’s application. Arthur Perez presented his case, without the aid of counsel.[3] Perez testified that he was a third generation mover and that the business had been in existence approximately ninety years. The business began with his grandfather who used a horse and wagon to move customers in New Orleans. Now, Perez has four straight trucks and seeks a certificate so that he may legally serve not only New Orleans, but also St. Tammany and St. Charles Parishes. Perez testified that over a three month period he turned down fifty-five calls for moves in the Mandeville, Covington, Baton Rouge, Slidell and Hou-ma areas. Perez did admit that some of the calls were unregulated.[4]
Two witnesses testified on Perez’s behalf. The first witness, Janice Parmelee, testified that her business was growing and that she used Perez in the past to move people into the New Orleans area. She stated that she had no particular problems with other movers in the area and she did not have any personal needs outside of the exempt area. Perez’s second witness, Cheryl Swanberg, testified that her family used Perez to move locally. She had problems obtaining a mover to move her daughter from New Orleans to Hammond on short notice, virtually over night. After Perez 19completed his presentation, HGC moved for a directed verdict. Perez then voluntarily moved to further restrict his application to transport household goods originating in Orleans and St. Tammany Parishes to destinations in St. Tammany and St. Charles Parishes.[5]
HGC presented five witnesses to rebut Perez’s testimony. As in Easley’s case, the witnesses generally represented large *551 companies that make statewide, interstate and international moves. None of the witnesses make short distance, short notice moves very often. All of the witnesses testified that there was no need for additional certificated movers and that the status quo could sufficiently satisfy the public’s need for moving services. The witnesses attempted to show there was no need for additional certified movers through testimony indicated that their equipment was underutilized and that existing carriers were “scratching to stay alive right now.”
Jeffrey Reber with Security Van Lines in the New Orleans area testified that Security’s equipment was utilized only forty-five percent of the time. This testimony, however, reflected the utilization at the time of the hearing in March 1997, not the utilization rate over heavy moving months or even an average utilization rate. Mr. Reber’s testimony was contradicted by Carol Lulich of Lee Moving & Storage who testified that Lee Moving had a one hundred percent utilization. Although Ms. Lulich changed her testimony to say that forty percent of her equipment was underutilized, it is not arbitrary or capricious for the PSC to believe the one hundred percent utilization rate. Even though Mr. Paulk testified that he could handle short notice, Imshort distance moves within the New Orleans area, he could not say what his utilization rates were.
Conclusion
It is well established that the determinations of the PSC, as a specialized regulatory entity, are accorded great weight when the determinations are within its expertise. See Mississippi Chem. Exp., 94-0440 at p. 7, 637 So.2d at 98. We should not reweigh the evidence or re-judge the credibility of the witnesses or substitute our findings for those of the PSC. Pontchartrain, 99-3184 at p. 3-4, 762 So.2d at 1085. Reasonable inferences of fact and of credibility made by the PSC should not be overturned on review even though we may reasonably disagree. Id. Thus, if the PSC’s determination is reasonably supported by the record, we must affirm. Id. In the cases of Easley and Perez, we cannot say that the evidence taken in light of the PSC’s expertise does not reasonably support a finding that both Easley and Perez proved PC & N.
Decree
We find that the Public Service Commission did not act arbitrarily or capriciously when it granted Easley and Perez very restricted common carrier certificates. The decision of the trial court is affirmed.
AFFIRMED.
KIMBALL, J., concurs in part and dissents in part, with reasons.

 James C. Gulotta, Justice Pro Tempore, sitting for Associate Justice Harry T. Lemmon.

. The Easley and Perez applications were heard with Pontchartrain Moving's ("Pontchartrain”) application. The district court affirmed the PSC's decision to grant a certificate to Pontchartrain. HGC appealed to this Court and we affirmed. See Pontchartrain, 99-3184 (La.6/30/00), 762 So.2d 1081. The trial court did not rule on the Easley and Perez applications until we handed down our decision in Pontchartrain.

. Utilization refers to the amount of time that the mover's equipment is in use. If the equipment is underutilized, the equipment is not being used all of the time. If the equipment is utilized for a large percent of the time, the equipment is being put to good use. A high utilization rate indicates that the moving company has a lot of business, but a high undem-tilization rate indicates that a moving company does not have a lot of business.
Testimony from witnesses at both hearings indicated that the moving business is seasonal. Though the witnesses did not specifically address' which months were busy and which were slow, generally, the heavy months, those months in which utilization would be high, are the summer months. The slow months, in which utilization would be low, are the late fall and early winter months.

. Arthur Perez and his son, Roy Perez, jointly applied for the certificate under Roy M. Perez d/b/a Arthur Perez Moving Professionals.

. La.Rev.Stat.Ann. § 45:172 provides that persons operating trucks or property carrying vehicles are exempt if the operation of the vehicle is within the corporate limits or within ten miles of an incorporated municipality. See La.Rev.Stat.Ann. § 45:172. The moves that occur within the ten mile radius of an incorporated municipality, such as New Orleans, are called unregulated or exempt moves.

. Perez initially sought authority to move household goods within a one hundred mile radius of New Orleans. Apparently this would have included the Baton Rouge area. After restricting his application, the witness testimony Perez introduced became more probative because the evidence presented dealt more with moves in St. Tammany and St. Charles Parishes than moves in Baton Rouge.