353 So.2d 1323 (1977)
B & M TRUCKING, INC., et al.
v.
LOUISIANA PUBLIC SERVICE COMMISSION.
No. 60600.
Supreme Court of Louisiana.
December 19, 1977.
Rehearing Denied January 27, 1978.
*1324 Harold R. Ainsworth, New Orleans, for plaintiff-appellant.
Ernest C. Hunt, Jr., Hunt, Godwin, Painter & Roddy, Lake Charles, for intervenor-appellant.
Herman J. Mouton, Marshall Brinkley, Baton Rouge, for intervenor-appellee.
DIXON, Justice.
This case involves the Louisiana Public Service Commission's grant of a certificate of public convenience and necessity to American Vacuum Truck Company, Inc. authorizing it to transport by vacuum tank trucks over irregular routes certain commodities consisting primarily of liquid products used in the oil and gas business.
A hearing was held September 20, 1976 before the Commission with Vacuum Truck Carriers of Louisiana, Inc., B & M Trucking, Inc., Prudhomme Truck Tank Service, Inc., Gulf Coast Pre-Mix Trucking, Inc., Garret Oil Field Service, Inc. and Browning-Ferris Vacuum Services, Inc. intervening in opposition. An order was issued by the Commission on November 18, 1976, with one commissioner dissenting, and subsequently amended January 11, 1977, granting the authority, but limiting the requested statewide authority to an area within a seventy-five mile radius of Westlake, Louisiana. Petitions for rehearing or reconsideration of both the initial and amended orders were denied.
An appeal to the district court was taken and the Commission's order was affirmed.
On appeal to this court intervenors contend: (1) American was not properly before the Commission, and therefore its application for authority should not have been heard; (2) American did not sustain its burden of showing that the public convenience and necessity would be materially promoted as required by R.S. 45:164; (3) the present motor carrier service available to the public is adequate to meet its needs; (4) the Commission failed to provide a fair and impartial hearing since one commissioner expressed his disagreement with the law and jurisprudence and indicated his intention to grant the permit before any of interveners' evidence was heard; and (5) intervenors were denied their constitutional right to fair and equal treatment, since American received favored treatment based on race.
1. American's appearance before the Commission.
American submitted its application for authority with the Commission on April 19, 1976; its corporate charter, however, was not filed with the Secretary of State until over a month later. Intervenors contend that since American was not incorporated at the time the application was filed that there was no "applicant" and the Commission's grant of authority would be null and void.
American attained corporate status over three months before the hearing was held and over seven months before the Commission rendered its order granting the authority. This "after-acquired status," although untidy, should not be fatal to the application. A contrary ruling would only result in an expensive duplication of proceedings *1325 already long finished, and produce only unnecessary delays. Neither intervenors nor the public has been harmed.
2. Did American sustain its burden of showing that the public convenience and necessity would be materially promoted?
3. Is the present motor carrier service adequate to meet the needs of the public?
The answers to these questions require a review of the evidence adduced before the Commission.
American presented five witnesses in support of its application. Ronald Griffith, president of American, which was to be located in Lake Charles, testified that in his work as an oil field contractor he was informed by his gang foreman that there were some delays in obtaining vacuum truck service in order to move salt water or mud from a storage area. Only two specific instances of delay were cited. In one instance in early 1974, W. C. Pickens Company of Dallas, Texas utilized Griffith's services to clean out a mud tank by hand when Pickens was unable to obtain a vacuum truck. Griffith could not specify the date nor could he say what companies or how many had been called. In the other instance, Griffith was working for Union Oil of California sometime between February and May of 1976 backfilling a pit when the need for a vacuum truck to remove fluid arose. Calls were made to a vacuum truck service in Lake Charles but, having been told no trucks were available, Union Oil was forced to shut down operation until a vacuum truck was provided. Again he could be no more specific on dates. He testified that any delay would be costly since the company would continuously be billed. It was also established that at least five other vacuum services are located in the Lake Charles-Lafayette-Abbeville area, all within the seventy-five mile radius of Westlake where American was given its authority to operate, but only one certified to operate in Lake Charles itself.
Of the four public witnesses called to testify on American's behalf, two stated they had had no trouble with existing services and had experienced no delays. However, both Mario Fattori, the division traffic supervisor for Amoco Production Company, and George Donlevy, the senior transportation analyst in the traffic department of Shell Oil Company, testified that they would make use of American's services if the certificate were granted. Fattori expressed the desire to have more service available in the event an emergency arose, while Donlevy stated the competition would tend to let the rates seek an equitable level.
R. L. Packer, the district superintendent for Sohio Petroleum Company, testified in American's behalf. He stated that approximately 25% of the times when a vacuum truck was needed the company would have to wait until that night or the next day when one would become available. This kind of delay resulted in substantial expense. Packer could not give any specific dates but stated the delays occurred within the first four months of 1976. He did testify, however, that 75% of the time the company could anticipate their need in advance and that in the four or five months prior to the hearing fewer problems were experienced since they were making the necessary advance arrangements. Packer also could not state what companies he had called, but only that when the trouble was in Lake Charles, Browning-Ferris would normally be called first.
George Cobb, the district production superintendent for Mobil Oil Company, testified that in the fifty to seventy-five times vacuum trucks were needed over a four month period in the Lockport Field outside Lake Charles, his foreman had to wait four to six times. It was intimated that Browning-Ferris, the company located in Lake Charles, had been called on these instances, however no specific dates could be offered.
Four witnesses appeared on behalf of intervenors. Edward M. McLandrich, president of B & M Trucking, Inc. of Lafayette, testified that his six vacuum tanks and seven tractors were not fully utilized but would sit idle 70% of the time. Additional business was needed. During the period in which the Sohio and Mobil representatives complained of a failure in service, B & M *1326 had never been called. He stated he could get equipment to the Lake Charles area where the problems discussed above arose in two to two and one-half hours. In the event an emergency arises, trucks are pulled off of jobs that are not as pressing and sent to where the need is greater; the consumer, however, would have to pay any additional expense incurred from transporting a truck from a job site that was further than the Lafayette terminal to the needed location.
Robert Hollier, the general manager of Gulf Coast Pre-Mix Trucking, Inc., testified that the company has three terminals, one located in Abbeville where twenty-two vacuum trucks are kept. He stated that, based upon a twenty-four hour day, seven day week, the company's equipment was only fully utilized 25 to 30% of the time and that additional business was needed. When trucks were unavailable they were called off of other jobs, or if none could be obtained in that way, a competitor was called. Gulf Coast does not pass the added costs on to the consumer. It was admitted that some delays were experienced. Hollier also testified that for six months in 1973 five trucks were moved to the Lake Charles area but were moved out for lack of work.
Wilbur Ducharme, the general manager of Prudhomme Tank Truck Service, testified that ten vacuum trucks were located at the company's Lafayette terminal and that there was 30% utilization of equipment based on a twenty-four hour day, seven day week. Prudhomme had been calling on customers to obtain more business.
Walter Elkins, the branch manager of Browning-Ferris Industries Vacuum Services, Inc., a publicly held corporation, testified that of the eighteen trucks located in Lake Charles sixteen were available. Elkins appeared before the Commission with detailed logs in order to refute or respond to specific charges of failures in service; as previously noted, American's witnesses could not designate times when delays were experienced. In the year from May, 1975 to the end of April, 1976, when American filed its application, and based on a twenty-four hour day, there was 31% utilization. Using an eight hour day the utilization would reach 93%.
Much discussion followed on the competency of the utilization figures used by intervenors. Elkins testified that his company remains on a twenty-four hour call seven days a week since most rigs work twentyfour hours a day. However, he did admit that most work-over rigs now shut down on the weekend and work five or six ten hour days to allow their employees a day off. Therefore, he conceded, there was no reasonable expectation that vacuum trucks would be needed on Sundays. Commissioner Kennon expressed his concern that an availability study taking into account an expectancy of full utilization on weekends would be statistically misleading.
The law applicable to this case is found in R.S. 45:164, which provides in pertinent part:
"No motor carrier shall operate as a common carrier without first having obtained from the commission a certificate of public convenience and necessity, which shall be issued only after a written application made and filed, a public hearing, due notice given to applicant and all competing common carriers, and a finding by the commission that public convenience and necessity require the issuance of a certificate. No new or additional certificate shall be granted over a route where there is an existing certificate, unless it be clearly shown that the public convenience and necessity would be materially promoted thereby."
This court has recognized the heavy burden an applicant bears; it must be clearly shown, when there are existing certificates over a certain route, that the public convenience and necessity would be materially promoted by a grant of authority to applicant. Gulf Coast Pre-Mix Trucking, Inc. v. Louisiana Public Service Commission, 336 So.2d 849 (La.1976), and cases cited therein. A ruling of the Commission is entitled to great weight as is that of other administrative bodies. Truck Service, Inc. v. Louisiana Public Service Commission, 263 La. 588, 268 So.2d 666 (1972). The courts, therefore, *1327 are limited in the scope of review of such orders. The standard of review was set out in Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, 247 La. 826, 174 So.2d 644 (1965):
". . . once the commission has decided to grant such an order and `* * * has acted within its power, and not arbitrarily or grossly contrary to the evidence, and when no error of law has been committed, the court must not substitute its judgment for that of the commission, or consider the expediency or wisdom of the order, or say whether on like evidence the court would have made a similar ruling,' Rubion Transfer & Storage Co. v. Louisiana Public Service Commission, 240 La. 440, 123 So.2d 880, and that the courts will not interfere with action by the commission unless it is shown to be arbitrary and capricious, Louisiana Tank Truck Carriers v. Louisiana Public Service Commission, 244 La. 909, 155 So.2d 15. In other words, upon judicial review a court will not upset orders such as the one in this case unless after looking at the evidence it concludes that the commission could not have reasonably concluded that there had been a clear showing that the public convenience and necessity would be materially promoted thereby, and that the commission's action was therefore arbitrary and capricious and a clear abuse of its power." 247 La. at 832-33, 174 So.2d at 647.
Recently this court, in Gulf Coast Pre-Mix Trucking v. Louisiana Public Service Commission, supra, even though reluctant to do so, overturned a ruling of the Commission. Authority had been granted to a trucking company to transport by motor freight service liquids used in the oil and gas business, including salt and fresh water, throughout the entire area of Louisiana south of Alexandria. We found that there was no evidence to support a grant of authority for transportation of petroleum products or salt and fresh water. The only showing made was a delay in delivery in five or six instances when an emergency need for a certain type of mud arose; the delays occurred over a five month period when approximately four hundred shipments had been made. Furthermore, no showing was made of damage or inconvenience to the public resulting from the delays.
American's showing in the instant case that the public convenience and necessity would be materially promoted by a grant of authority to it clearly cannot be termed "substantial." Nevertheless, an order by the Commission will not be overturned when there is "some evidence" upon which it could reasonably base its determination. Truck Service, Inc. v. Louisiana Public Service Commission, supra. American was able to show the following failures in service: (1) W. C. Pickens Company of Dallas, Texas was unable to obtain vacuum truck services in early 1974; (2) sometime between February and May of 1976 Union Oil of California was forced to shut down operations while awaiting a vacuum truck from a Lake Charles company; (3) Sohio Petroleum Company experienced delays in obtaining vacuum truck service in the Lake Charles area 25% of the time; (4) Mobil Oil Company had to wait for a vacuum truck in the Lake Charles area four to six times out of the fifty to seventy-five times services were needed in a four month period. Some evidence of damage or inconvenience was shown in the Sohio representative's testimony that the company still had to pay a ten hour minimum at $75 to $100 per hour in spite of delays, in the Mobil representative's testimony that any delays would cause additional expense for a work-over rig job, and in American's president's own testimony that a company was continuously billed even if operations had to cease temporarily.
No logs or records were produced to substantiate any of the above allegations. Although "generalities do not suffice," Gulf Coast Pre-Mix Trucking v. Louisiana Public Service Commission, supra, when applicant's witnesses are not specific enough to allow interveners the opportunity to explain or rebut the testimony, the lack of specificity goes to the credibility of the witnesses and the weight to be given their testimony. Hearin Tank Lines, Inc. v. Louisiana Public Service Commission, supra. Even though the evidence is general in nature, it is "some evidence."
*1328 Intervenors attempted to show that their equipment was under-utilized and, therefore, they would be able to provide the service which applicant proposes without inconvenience to the public. All intervenors testified that their equipment was fully utilized only about 30% of the time based upon a twenty-four hour day, seven day week. The branch manager of Browning-Ferris, however, indicated that, based on an eight hour day, his company's equipment reached a 93% uitilization. Although we are not in a position to designate the appropriate base period for determination of utilization of equipment, we join in Commissioner Kennon's concern that a figure based upon a twenty-four hour day, seven day week may be misleading under the circumstances. Therefore, the evidence as a whole does not force a finding that the services offered by existing carriers within a seventy-five mile radius of Westlake, Louisiana are sufficient to meet the public need.
American presented evidence of instances, although unsubstantiated, where delays in obtaining vacuum truck services caused damage or inconvenience to the public in the Lake Charles area. It was not shown that all available services were called in order to give those other companies the opportunity to satisfy the need. If the companies located in Lafayette or Abbeville had been called, it was shown it would take at least two to two and one-half hours to reach Lake Charles. It is unclear whether the delays occurred in situations where the companies in need of vacuum truck services could or should have anticipated the need in advance in order to avoid any costly delay. Nevertheless, although the case might have been decided differently, we do not find that the record was so lacking in evidence that the Commission abused its power or acted arbitrarily and capriciously. It should be noted that American applied for authority to transport the commodities statewide yet the grant of authority was limited to an area within a seventy-five mile radius of Westlake, Louisiana. Most of the evidence indicated the service failures occurred in the Lake Charles area where American's terminal would be located. We will not substitute our judgment for that of the Commission.
4. The failure of one of the commissioners to apply the law and jurisprudence.
Intervenors allege that certain remarks made by one of the commissioners indicated his bias and could have had a prejudicial effect upon the other commissioners. The commissioner at various points in the proceeding interjected his personal philosophy in support of a free enterprise system and remarked that he felt intervenors were attempting to keep others out of business by perpetuating a legally authorized monopoly. The record does disclose an element of bias by the commissioner; however, we will not upset the order of the Commission on this record. Rule 27 of the Louisiana Public Service Commission Rules of Practice and Procedure provides that hearings will be conducted by at least three commissioners. (Under certain circumstances, exceptions are made to allow the continuation of a hearing with less than three commissioners). Rule 44 provides that an order must be signed by at least three commissioners. In the instant case, five commissioners were present at the hearing and four commissioners signed the order while one commissioner dissented. Even without the signature of the biased commissioner, the requisite three signatures to grant the authority requested are present. We also find no evidence in the record that the remarks made had any effect upon the opinions of the other commissioners. Intervenors should in the future consider filing a motion to recuse a commissioner at the time when potential prejudice becomes apparent.
5. Prejudicial treatment afforded American based on race.
Intervenors contend that they were the subject of "reverse discrimination" and thereby were denied their constitutional right to fair and equal treatment. They allege that during a pre-trial conference the Commission's representative remarked that "other considerations" such as American's "minority group ownership" would play a *1329 part in granting the certificate of public convenience and necessity. The purported remarks, however, were "off the record."
Interveners point to the Shell Oil representative's remarks as to Shell's policy of encouraging the initiation of minority business ventures. However, when objection was made, Chairman Lambert responded that his concern was merely the facts which related to the application. Later both Chairman Lambert and another commissioner stated that any decision made by them would not be based upon race but rather upon the facts and the evidence. The record does not disclose that racial bias played any part in the Commission's decision to grant the certificate of authority.
For the reasons assigned, the judgment appealed from upholding the Public Service Commission's grant of a certificate of public convenience and necessity to American Vacuum Truck Company, Inc. is affirmed.
SANDERS, C. J., and MARCUS, J., dissent.
SUMMERS, J., dissents. The abundance of facilities in the area certified convince me that no adequate showing of necessity appears in this record.